## SCHLESINGER *v.* STATE TAX COMMISSION

George Mead, Portland, argued the cause and filed a brief for plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause and filed a brief for defendant.

Decision for plaintiff rendered June 11, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. VL 63-87, which affirmed the Lane County Assessor's determination of the true cash value of plaintiff's real property in Eugene, Oregon. The Court viewed the premises at the time of trial. In their

briefs, the parties agreed that no substantial question of law is presented by this case.

Plaintiff is the owner of the quarter block at the southeast corner of Broadway and Charnelton Streets in the central business district of Eugene. The one-story building on the land is occupied by Thrifty Drug Store, Fabric House, and Casual Colony Shop. The assessor determined the subject property's true cash value to be: land, $310,000, and improvements, $162,000, for a total of $472,000. Plaintiff contends that the true cash value should be: land, $280,000 and improvements, $120,000, for a total of $400,000.

Both parties rely primarily on the income approach. Applying this approach, they segregate out land value determined by the comparative sales approach. They then apply an income rate percentage to this land value to determine the income allocable to the land. Finally, they subtract the income allocable to the land from total income and apply a capitalization rate to this remaining income to determine the improvement value. The sum of land and improvement values then is the true cash value of the subject property. The Court finds no objection to this method.

In determining land value, the assessor made the more appropriate land sale study. Plaintiff's appraiser broadened his study to the extent that he often compared "apples and oranges." The assessor's land value of $309,880 is correct.

In determining the value of the improvements by the income approach, the Lane County Assessor used an annual economic rent of $51,000. It is not clear where he got this rent. It conflicts with the actual rent which was established at approximately $43,000 per annum.

■ Of course, actual rent does not establish economic rent. However, in cases such as this one, it is particularly persuasive. The leases of the subject property provided for percentage rents based on sales. The property is in the central business district of Eugene. Such districts of Willamette Valley cities are undergoing substantial transition due to changing consumer habits and problems of parking, access, street width, one-way traffic, and competing suburban shopping centers. In central business districts, percentage leases based on sales tend to reflect accurately the effect on value of this transitional period and to fluctuate with the ebb and flow of the district's business fortunes.

■■ The economic attractiveness of central business districts is important not only to the cities and the property owners. It is important also to the stabilization of the county tax base and to avoidance of property value reduction due to scatteration. Therefore, full recognition of transition factors in property tax valuations is essential to equitable assessment of these properties in the public interest. This does not mean that central business district properties should be favored. Rather assessments during this transition period should be based upon continuous reappraisal and review of the changing character of these areas. In such review the actual rents established in arm's length transactions should weigh heavily in determination of economic rent. This is true particularly of those rents established in percentage leases, such as the leases on the subject property, because such leases reflect consumer reaction to central business district problems. For the foregoing reasons, this Court finds plaintiff's actual rent is more indicative of economic rent than the figures used by the assessor.

Both parties considered vacancy allowances, plaintiff in the use of a seven per cent return on investment and the defendant in the use of a five per cent vacancy allowance. This court approves of defendant's method.

Defendant used an 8.5 per cent capitalization rate on land and a 40-year straight line depreciation rate on improvements. The parties' capitalization rates did not vary substantially. The Court upholds the assessor's capitalization rate of 8.5 per cent for land and 11 per cent for buildings.

■ In summation, the only error that this Court finds in the determination made by the assessor and affirmed by the commission is the failure to give adequate consideration to actual rents arising from arm's length transactions in a central business district in transition. When such consideration is given, the value of plaintiff's property is determined to be $410,000. The computation of this value is as follows:

| | | |
|---|---:|---:|
| Gross Income | | $ 43,000 |
| Less: Vacancy (5%) | $2,150 | |
| Operating Expense: | | |
| Management (3%) | 1,290 | |
| Maintenance and Repairs | 1,000 | |
| Insurance | 1,200 | 5,640 |
| Net Rent | | $ 37,360 |
| Chargeable to Land | | |
| $309,880 x 8.5% | | 26,340 |
| Chargeable to Improvements | | 11,020 |
| Land Value | | $309,880 |
| Improvement Value | | |
| $11,020 income ÷ 11% | | 100,181 |
| Total value | | $410,061 |
| Rounded Value Figure | | $410,000 |

Therefore, this court finds the true cash value of plaintiff's subject property for the tax year 1962-63 to be $410,000.

In accordance with this decision, plaintiff shall prepare a decree setting aside defendant's Opinion and Order, determining the value of the subject property for the tax year 1962-63 to be $410,000, true cash value, and directing the assessor and sheriff to correct the assessment and tax rolls of Lane County in accordance therewith.