RUTH G. NEPOM
*v.*
DEPARTMENT OF REVENUE

EDITH KAMIN, WILLIAM P. GALEN,
MORRIS J. GALEN, HARRY I. GALEN
and CANDACE E. GALEN
*v.*
DEPARTMENT OF REVENUE

Morris J. Galen, Tonkon, Torp & Galen, Portland, represented plaintiffs.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered June 13, 1978.

CARL N. BYERS, Judge pro tempore.

The above two cases were consolidated for trial, being the same property under different ownerships for different years. Plaintiffs appeal from an order of the Department of Revenue, No. VL 76-701, denying plaintiffs' requested relief as to the assessed values for the parcel for the tax years 1975-1976 and 1976-1977. Plaintiffs appeal only the value of the improvements.

The improvements in question are 44 apartment units, each unit a two-bedroom apartment. Constructed in the early 1900s, the improvements consist of eleven buildings located on two full city blocks, with large areas of open space between the buildings. They are heated by an oil-fired central heating system and are generally well maintained. Although the land is in a light industrial zone, the apartments are conveniently located for shopping, churches, schools, and other amenities.

Plaintiffs contend that the age, location and position of the improvements render them virtually valueless because of the extraordinary expenses of maintenance and operation. Plaintiffs also contend that the improvements are an underimprovement to the land upon which they are located. Mr. William W. Barendrick, an experienced appraiser, testified in support of plaintiffs' position. Mr. Barendrick did not make a complete appraisal of the improvements. Using only the income approach, he analyzed the income and expenses furnished to him by the plaintiffs. That analysis caused him to determine that all of the net income earned by the apartments should be attributed to the land. His conclusion was based upon the following line of reasoning: there is no question that the land has a market value of $280,000. Since the land would require a 9 to 10 percent annual return on investment, a land value of $280,000 should return $25,000 to $28,000 per year. This exceeds the net income received from both the land and the improvements in question. Therefore, no value can be attributed to the improvements. Mr. Barendrick testified

that, in comparing the income and expense information furnished to him by the plaintiffs with the expenses and information of other apartments, he found that the expenses here were much higher.

Mr. Michael P. Keller, appraisal supervisor, testified for the defendant. Mr. Keller agreed that the land had a value of $280,000 based upon comparable sales. He disagreed, however, that the highest and best use of the land is light industrial. He testified that, since the land is improved with apartments which are in good condition, those apartments help determine the land's highest and best use. He concluded that the current highest and best use of the land is for multiple residential.

Mr. Keller used two income approaches in valuing the improvements. In his first approach, he capitalized his determination of net income to arrive at an estimated true cash value. In making these computations, he estimated gross rental income to be higher than the actual income reported by the plaintiffs. He also used lower estimated operating expenses based upon studies of comparable apartments. Consequently, his "net income" was substantially greater than the actual net income received by the property. In his second income approach, Mr. Keller used a gross rent multiplier based upon higher estimated gross rents than those actually received from the property. On cross-examination, Mr. Keller admitted that none of the comparable apartment developments from which he derived his income and expense data was as spread out as the subject property. He also agreed that none of them was located on land which had a value equal to $6,000 per apartment unit, conceding that the normal is in the range of $3,000 per unit.

Mr. Morris J. Galen, attorney for plaintiffs and one of the interested parties, called himself as a witness to testify as to the actual expenses incurred. He indicated that the list of expenses submitted to the court showed actual out-of-pocket expenses except for the management fee which was an estimated expense. He testified

that only some of the expenses incurred were much higher than other apartment properties and that these higher expenses were a direct result of the age of the improvements and their displacement over the large area of land.

Although only the value of the improvements is in issue, much of the testimony dealt with the land. The parties agree that the land has a value of at least $280,000. Plaintiffs contend that all of the income must be attributed to this unquestioned value, resulting in the conclusion that the improvements have no value since there is no income to be attributed to them. Defendant contends that the land is properly improved, that the income is earned by the improvements and therefore the answer to the dilemma must be that the subject property is not properly managed, incurring high expenses and earning a low net income.

■■ While it is true that an appraiser is not limited to using actual expenses in estimating the value of property, estimated expenses used must be related to the specific property in question. Here, the defendant failed to establish that the estimated expenses are more reflective of the market than the actual expenses. To the contrary, the preponderance of the evidence shows that the age and displacement of the improvements result in higher expenses. When the evidence indicates that the highest and best use of a property is becoming a use inconsistent with the improvements on the land, actual income and expenses should be given greater weight than estimated expenses. *Schlesinger v. Commission,* 1 OTR 609 (1964).

Plaintiffs' position seems somewhat incongruous since the evidence clearly establishes that the improvements are attractive, well maintained, fully occupied, and apparently rented at market rents. While it is not unusual for an improvement to be a burden upon land or to have little value, such improvements are usually in a blighted condition, unattractive, and rented for a lesser amount. Here, it is not the

lesser gross income that detracts from the value of the total property, but the higher expenses incurred in operation of the improvements. If the apartment units here were less spread out and newer in construction, then, undoubtedly, plaintiffs' operating expenses would be less, the net income greater, and the value of the improvements greater.

Defendant also conceded that apartment units are not usually located on such expensive land. If, given the same income and expenses, these units were located on land half as valuable as the land upon which they are actually located, then it appears that some value could be attributed to the improvements. However, here the preponderance of the evidence demonstrates that not only are the improvements poorly arranged and old (requiring greater maintenance), the land is zoned and could be used for a higher use than multiple residential. This situation can only result in the improvement value being less than it would be on land with a lower use potential.

In view of the above, it appears that the improvements have only a nominal or no value. The plaintiffs have alleged a value of $5,000. In view of this allegation, and based upon the court's findings set forth above, the court finds that the true cash value of the improvements in question is $5,000 as of the assessment date for each of the tax years in question.

The Department of Revenue's Order No. VL 76-701, dated November 30, 1976, is set aside and held for naught and a decree shall issue from this court ordering the Multnomah County Assessor/Tax Collector, Division of Assessment and Taxation, Multnomah County, to correct the assessment and tax rolls for the tax years 1975-1976 and 1976-1977. If taxes have been paid by the plaintiffs in excess of those required by the assessment and tax rolls as amended, the excess, with statutory interest thereon, shall be remitted to the plaintiffs by the county commissioners as provided by ORS 311.806 and 311.812.

Plaintiffs are entitled to their statutory costs.